UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ANGELO RODRIGUEZ,

                  Defendant,

        - against -

UNITED STATES OF AMERICA.

--------------------------------------------------------x

**MEMORANDUM & ORDER**
13-CR-85 (PKC)

PAMELA K. CHEN, United States District Judge:

      Defendant Angelo Rodriguez, a prisoner in federal custody and proceeding *pro se*, moves

for habeas relief under 28 U.S.C. § 2255.[1]  In the main, Rodriguez argues that he was denied

effective assistance of counsel because his trial attorney allegedly misled him with respect to a

motion to suppress certain evidence.  He also argues that his trial counsel was ineffective for not

objecting to a jury charge that instructed the jury that it could convict him of possession of a firearm

in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A) as long as it found that

he constructively possessed the firearm.  Rodriguez contends that 18 U.S.C. § 924(c)(1)(A) does

not encompass constructive possession.  For the reasons below, Rodriguez's claims do not provide

any basis for habeas relief, and his § 2255 motion is denied.

---

[1]  Because Defendant Rodriguez is *pro se*, the Court liberally construes his motion and
interprets it "to raise the strongest arguments that [it] suggest[s]."  *See Triestman v. Fed. Bureau
of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (italics and citation omitted).  But the
Court "need not act as an advocate for *pro se* litigants."  *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir.
1998).

## BACKGROUND

### I.    Defendant's Arrest

In November 2012, Rodriguez was arrested and charged with several federal crimes for his participation in and leadership of a drug trafficking organization in the greater New York City area.  (*See generally* Complaint, Dkt. 1; Superseding (S-1) Indictment, Dkt. 49.)  The relevant facts, as adduced at trial, are as follows.[2]

On the morning of November 14, 2012, an undercover agent ("UC") with the Drug Enforcement Administration ("DEA") received information from a confidential source that individuals in the New York City area were looking to transfer $450,000 in alleged drug proceeds and that these individuals could be contacted at 917-573-4024 (the "4024 Number") using a particular code word.  (*See* Trial Tr. at 61:9–11, 66:3–69:6, 104:12–18.)  The UC called the 4024 Number at approximately 9:00 a.m. and spoke with a man, later identified as Hector Gamez Parra, who told the UC that the money would be delivered in three installments, with the first delivery occurring later that day in the Bronx.  (*See id.* at 69:7–9, 71:3–25, 1008:19–1009:9.)  The UC subsequently received a call from a second man using the 4024 Number, and the UC and this second individual agreed that the first delivery would occur in the parking lot of a Kmart Shopping

---

[2]  The trial and pretrial proceedings in this case were held before the Honorable Sandra L. Townes.  Although the Government in its submission with respect to the present motion directs this Court to certain parts of the trial transcript, the Court has conducted an independent review of the trial transcript.  The Court notes that the trial transcript was filed in its entirety with the Second Circuit in Rodriguez's direct appeal and is publicly available via the Second Circuit's electronic docketing system.  *United States v. Rodriguez*, No. 16-4177 (2d Cir. Dec. 21, 2017), ECF Nos. 73–77.  Because Defendant was convicted at trial, the Court presumes the facts set forth herein as established and views them in the light most favorable to the prosecution.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.").

Center located off of the Bruckner Expressway, at Bruckner Boulevard and White Plains Road in the Bronx. (*Id.* at 74:11–76:11.) The second individual told the UC that another man would deliver the money. (*Id.* at 75:22–24.) Later that day, the UC received a call from a third man, later identified as Rodriguez's co-defendant Miguel Deasis, and the two agreed to meet at 3:00 p.m. in the designated Kmart parking lot. (*See id.* at 82:22–84:11, 86:3–87:2.) At approximately 3:00 p.m., Deasis and the UC met in the Kmart parking lot, and Deasis gave the UC a Kohl's shopping bag containing a yellow box. (*Id.* at 90:2–91:10.) Inside the yellow box were three plastic-wrapped bundles of cash, totaling approximately $150,000. (*See id.* at 95:23–99:18.)

After delivering the money to the UC, Deasis, who was by himself, drove away from the parking lot in a silver 2010 Jeep Liberty. (*Id.* at 92:22–93:5, 94:23–95:22, 143:25–144:3.) Officers from the New York Drug Enforcement Task Force (the "Task Force"), who were conducting surveillance of the meeting, followed. (*Id.* at 144:4–145:3.) Deasis eventually arrived at a single-family home located at 249 Concord Road in Yonkers, New York, where he parked the Jeep in the driveway and went inside. (*See id.* at 145:4–147:1, 154:12–18.)

While Deasis was inside, the UC spoke again with Gamez Parra. (*See id.* at 103:6–20.) The UC asked Gamez Parra whether the remaining funds could be handed over in one delivery, instead of two separate deliveries as previously discussed. (*Id.*) Gamez Parra said that he would have to check and get permission to do so. (*Id.* at 103:21–23.) Gamez Parra also told the UC that the same person who had made the first delivery—*i.e.*, Deasis—would be making the next delivery at the same Kmart parking lot in the Bronx. (*Id.* at 103:24–104:3.)

A short while later—about 40 minutes after Deasis first arrived at the house on 249 Concord Road—Deasis emerged from the house with Defendant Rodriguez, each of them carrying a box like the one Deasis had delivered to the UC earlier in the day. (*Id.* at 169:3–170:20.) Both

3

men went to the passenger side of the Jeep, where they remained for several minutes, and then went back into the house emptyhanded.  (*Id.* at 171:7–172:14.)  A short while later, Deasis and Rodriguez exited the residence with a third man—Gamez Parra.  (*Id.* at 178:3–11.)  All three men spent some time on the passenger side of the Jeep.  (*Id.* at 178:12–14.)  Gamez Parra then returned inside the house while Deasis and Rodriguez drove away in the Jeep, with Deasis in the driver's seat and Rodriguez in the passenger seat.  (*Id.* at 178:14–17, 180:10–11.)  Officers from the Task Force followed and stopped the Jeep before it reached the Kmart parking lot.  (*Id.* at 180:1–7, 201:16–203:2.)  After receiving Deasis's consent to search the vehicle, the Task Force officers found, among other things, six bundles of cash totaling $300,000, wrapped identically to the three bundles that the UC had received earlier, as well as five cell phones, including one with the 4024 Number.  (*See id.* at 205:20–206:1, 211:14–214:18, 217:5–16, 232:11–20.)[3]  Deasis and Defendant Rodriguez were arrested and searched.  (*Id.* at 232:21–233:6.)

Meanwhile, back at 249 Concord Road, another group of Task Force officers approached the house.  (*See id.* at 336:11–25.)  Gamez Parra, the only person at the house at that time, answered the door.  (*Id.* at 337:1–10.)  When Gamez Parra began speaking in Spanish, one of the officers who spoke Spanish took the lead in speaking with Gamez Parra.  (*Id.* at 337:10–15.)  Gamez Parra eventually allowed the officers to enter the house, told the officers that he was staying in one of the bedrooms, and gave verbal—but not written—consent for the officers to search the house.  (*See id.* at 337:25–339:8, 381:25–382:7.)  Gamez Parra then advised the officers that there was a gun in the basement.  (*Id.* at 339:11–14.)  The officers proceeded to the basement and, in a cabinet in

---

[3]  The money bundles were all found in a secret compartment, also known as a "trap," in the Jeep.  (*See* Trial Tr. at 213:6–214:18.)  The cellphones, including the one with the 4024 Number, were found in the arm console between the two front seats.  (*See id.* at 212:5–13, 214:23–217:16.)

a built-in kitchen area, found a .45 caliber handgun and a magazine of bullets.  (*See id.* at 339:15–21, 353:15–19.)  In a nearby cabinet, a "half step to a step" away, the officers found 40 kilograms of cocaine.  (*See id.* at 340:16–21, 347:13–20.)

After discovering the gun and cocaine in the basement, the officers searched the other parts of the house.  (*See id.* at 341:8–9.)  Among other things, the officers found several cell phones, a laptop computer belonging to Gamez Parra, a Food Saver machine used to heat-seal plastic wrap, multiple boxes of plastic Food Saver bags, and a ream of plastic wrap.  (*See id.* at 341:10–342:8.)  The officers also found various receipts and paperwork, including a JetBlue boarding pass showing that Gamez Parra had flown from Long Beach, California, to New York City on October 22, 2012, and a Verizon Fios bill addressed to Defendant Rodriguez at 249 Concord Road.  (*See id.* at 362:20–363:2, 364:7–18.)  After completing their search of the house, the officers arrested Gamez Parra.  (*Id.* at 380:16–18.)

## II.    Pretrial Proceedings

Defendant Rodriguez, along with co-defendant Deasis, was indicted on three counts: (i) conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; (ii) conspiracy to launder money, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and (iii) unlawful possession of a firearm in furtherance of a drug trafficking crime, which carries a mandatory consecutive sentence of at least five years under 18 U.S.C. § 924(c)(1)(A)(i).  (*See* Complaint, Dkt. 1, at 1–2; S-1 Indictment, Dkt. 49, ¶¶ 1–3.)  Rodriguez was arraigned on the indictment on February 21, 2013, at which time he pleaded not guilty.[4]  (*See* 2/21/2013 Minute Entry, Dkt. 25.)

---

[4]  On November 4, 2013, Gamez Parra, who was indicted on the same charges, pleaded guilty to cocaine distribution conspiracy—the first count of the Indictment—and received a ten-year prison sentence, which is the mandatory minimum under 21 U.S.C. § 841(b)(1)(A).  (*See* 11/4/2013 Minute Entry, Dkt. 38; Judgment as to Gamez Parra, Dkt. 152, at ECF 2.)  Citations to

Prior to trial, Rodriguez—represented at the time by retained counsel Murray Richman and Thomas J. Sullivan—moved, among other things, to

> Suppress[] as evidence all property seized in this case because the search and seizures of [Rodriguez]'s person and property violated his rights under the Fourth Amendment of the United States Constitution; . . .

> Suppress[] all evidence derived from the illegal search and seizures as fruit of the poisoned tree under *Wong Sun v. United States* and *Dunaway v. New York*; . . .

> Suppress[] evidence seized under Search Warrants as fruit of the poisonous tree or, in the alterative granting a hearing under *Franks v. Delaware*[.]

(Notice of Motion ("Pretrial Mot."), Dkt. 43, at 1.)[5]  The memorandum of law in support of Rodriguez's suppression motion elaborated further that:

> Rodriguez moves to suppress all physical evidence derived from the illegal searches, seizures and arrest . . . as well as the testimony of agents and officers regarding their observations, inquiries and recovery of approximately $300,000 dollars [*sic*] wrapped in heat-sealed packaging in a compartment of Deasis's car. So too, regarding information agents and officers used to obtain search warrants authorizing searches of his cell phone and a piece of mail addressed to his name.

(Memorandum of Law in Support of Pretrial Motions ("Pretrial Mem."), Dkt. 45, at 16.)  At an evidentiary hearing before Judge Townes, however, Attorney Sullivan—who by that point was Rodriguez's sole attorney because Attorney Richman had withdrawn from the case (*see* 7/10/2014 Minute Entry)—conceded that Rodriguez did not have standing to challenge the search of, and any evidence recovered from, the house at 249 Concord Road:

> SULLIVAN:  And in your years as a police officer and working with the DEA, different Task Force and teams that you testified to, is it your understanding that the DEA Agents Manual instructs you to obtain a warrant whenever possible?

---

"ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[5]  Rodriguez's co-defendant, Deasis, subsequently joined the suppression motion.  (*See* Dkts. 72–73.)

6

| | |
|---|---|
| DETECTIVE: | I don't know if it tells you to obtain a warrant whenever possible.  Every situation is different, based on the circumstances. |
| SULLIVAN: | Okay.  But there was no warrant obtained in this case, correct? |
| DETECTIVE: | No, except there was a search warrant eventually obtained on this case, yes. |
| SULLIVAN: | I'm talking about—and that's my fault.  Let me clarify it.  As far as the search of the vehicle is concerned, the Jeep Liberty, there was no warrant, correct? |
| DETECTIVE: | That's correct, sir. |
| SULLIVAN: | And as far as the search of the residence at 249 Concord Road, there was no search warrant, correct? |
| DETECTIVE: | That is correct, sir. |
| THE COURT: | I didn't hear any testimony about a search of 249. |
| GOVERNMENT: | There was testimony, your Honor, of a search of 249. |
| SULLIVAN: | I believe there was testimony that there was a Verizon— |
| THE COURT: | Yes, but that was— |
| SULLIVAN: | That was from the house, Judge. |
| THE COURT: | Oh, okay.  I thought it was from the vehicle. |
| SULLIVAN: | No, that was seized in the house, your Honor. |
| THE COURT: | All right. |
| GOVERNMENT: | I will note, your Honor, if I may—I'm not sure where Mr. Sullivan is going with the search of the house, but he has not established that he has standing to challenge the search of that house.  There's been no affidavit demonstrating Mr. Rodriguez had any interest in that house. |
| THE COURT: | What about that? |
| SULLIVAN: | Well, he didn't have standing in the house, Judge. |
| THE COURT: | All right.  So let's move on. |

(Government's Opposition to § 2255 Motion ("Govt.'s Opp."), Dkt. 225, at 6–7 (internal footnotes omitted).)

7

Following the evidentiary hearing, the parties engaged in post-hearing supplemental briefing, which focused exclusively on the search and seizure of evidence from the Jeep Liberty. (*See generally* Dkts. 79, 83.)   On November 14, 2014, Judge Townes held oral argument on Rodriguez's suppression motion and denied it.   (11/14/2014 Minute Entry.)   Judge Townes subsequently issued written findings of fact and conclusions of law, determining that the facts "in this case provided probable cause to stop the vehicle and to open and search all of it regardless of whether the defendants consented to the search."  *United States v. Deasis*, No. 13-CR-85 (SLT), 2015 WL 1439869, at *4 (E.D.N.Y. Mar. 27, 2015).

### III.   Trial and Posttrial Proceedings

In March 2015, this case proceeded to a jury trial.  At trial, Rodriguez's defense counsel, Sullivan, attempted to convince the jury that Rodriguez could not be associated with the house at 249 Concord Road, and that the Government rushed to indict Rodriguez of the charges without proper investigation or evidence.  During a brief opening statement, Sullivan told the jury that "this case is about a rush to judgment," and emphasized that "there is not a single photograph" and "not any videotape" of Rodriguez "coming out of the house," "despite the fact that the house was covered by trained government agents."  (Trial Tr. at 43:11–17.)  Similarly, in cross-examining one of the officers who searched the house, Sullivan endeavored to draw out that there was little to connect Rodriguez to the house.  (*See, e.g.*, *id.* at 370:10–18 ("Q. So is that the only piece of mail with my client's name, Angelo Rodriguez, on it? / A. That was located in the residence, correct. / Q. And there were no photographs of him in the residence, correct? / A. No, there wasn't anything. / Q. Was there any indicia that he lived in that residence besides the Verizon document that you referred to? / A. Related to him, no, that we could find.").)  Finally, in closing arguments, Sullivan reiterated to the jury that "this case was about a rush to judgment" (*id.* at 1030:4–9), and he again argued that Rodriguez could not be connected to the house (*see, e.g.*, *id.* at 1032:3–11

8

("Now, the government here, you saw the pictures, and the pictures are certainly worth a thousand words . . . yet, there is not a single photograph of Angelo Rodriguez coming out of that so-called stash house.  And the question is why.  You got to ask yourself why not?  It's not there."); 1034:9–16 ("They took the gun in the case from the house, no Rodriguez's fingerprints, no DNA on the gun. . . . They talked about 40 bricks of cocaine inside the house.  No fingerprints on it.  You got to ask yourself why not.")).

While the jury heard argument from defense counsel about Rodriguez's lack of connection to the house at 249 Concord Road, the jury also was presented with evidence to link Rodriguez to the residence.  Besides the Verizon Fios bill addressed to Rodriguez at 249 Concord Road (*see id.* at 364:7–18), the jury, for example, learned that on November 1, 2012, a couple weeks before his arrest, Rodriguez purchased $2,409 worth of furniture for the house, which was delivered to the house on November 3, 2012 (*see id.* at 630:3–633:13).  The jury also heard testimony from Abey Joseph, the owner of the house at 249 Concord Road, who rented it out and remembered receiving a contact number that turned out to be associated with a cell phone belonging to Rodriguez.  (*See id.* at 417:2–12, 430:11–432:1, 870:2–10.)

The jury convicted Rodriguez of all three counts of the Indictment.  (Verdict Sheet as to Rodriguez, Dkt. 149.)  On November 29, 2016, Judge Townes sentenced Rodriguez to 19 years' imprisonment—14 years on the two conspiracy counts (drug trafficking and money laundering), to run concurrently, and five years on the firearm count, to run consecutively.  (*See* 11/29/2016 Minute Entry; Judgment as to Rodriguez, Dkt. 189, at ECF 1–3.)

Rodriguez appealed his convictions and sentence.  (Notice of Appeal, Dkt. 191, at ECF 1.)  Represented by different counsel before the Second Circuit, Rodriguez challenged the admission of certain trial testimony as well as the sufficiency of the evidence supporting his convictions.  *See*

9

*United States v. Rodriguez*, 727 F. App'x 24, 26 (2d Cir. 2018) (summary order).  The Second Circuit rejected Rodriguez's evidentiary challenge and affirmed his convictions for conspiracy to distribute cocaine[6] and possession of a firearm in furtherance of a drug trafficking crime.  *Id.* at 27–28, 28 n.1.  The Second Circuit, however, determined that there was insufficient evidence to sustain Rodriguez's conviction for money laundering conspiracy, and reversed that conviction.  *Id.* at 28–29.

On remand, this Court held a re-sentencing hearing on October 9, 2018, at which it sentenced Rodriguez to ten years' imprisonment on the drug conspiracy charge, the minimum mandated under 21 U.S.C. § 841(b)(1)(A), to be followed consecutively by five years' imprisonment on the firearm possession charge, as required by 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(D).  (*See* 10/9/2018 Minute Entry; Amended Judgment as to Rodriguez, Dkt. 213, at ECF 1–2.)  The Court also imposed the then-mandatory five-year term of supervised release under 21 U.S.C. § 841(b)(1)(A).  (Amended Judgment as to Rodriguez, Dkt. 213, at ECF 3.)   An amended judgment was entered on October 9, 2018.  (*Id.* at ECF 1.)

---

[6]   In concluding that there was sufficient evidence for a reasonable jury to convict Rodriguez of conspiracy to distribute cocaine, the Second Circuit recounted evidence adduced at the trial that connected Rodriguez to the house at 249 Concord Road:

> Rodriguez was in frequent contact with the lessee of 249 Concord Road before and shortly after November 1, 2012, the date the lease began; [] his phone number was provided as an alternate number at which the lessor could reach the lessee; [] he ordered Verizon service for 249 Concord Road in his name on November 6, 2012; [] his phone number was listed as the alternate number on a water turn-on request dated November 13, 2012; and [] he ordered and paid for $2409 worth of furniture on November 1, 2012 and took delivery of that furniture at 249 Concord Road on November 3, 2012.  In addition, Rodriguez was inside 249 Concord Road with his two alleged co-conspirators for at least 40 minutes on November 14, 2012 before exiting the house carrying a box that resembled the box that had been dropped off earlier to the undercover agent.

727 F. App'x at 28.

## IV.     Instant Habeas Motion

On September 25, 2019, Rodriguez timely filed the instant *pro se* motion for habeas relief under 28 U.S.C. § 2255.[7]  (2255 Motion, Dkt. 217, at ECF 1, 13.)  The motion asserts that Rodriguez's trial counsel was ineffective for (1) misrepresenting that a motion to suppress evidence retrieved from the 249 Concord Road residence had been filed and denied, when no such motion had been filed, and (2) failing to object to the inclusion of a charge instructing the jury that it could convict Rodriguez of possession of a firearm in furtherance of a drug trafficking crime as long as it found "constructive possession" of a firearm in furtherance of such crime.[8]  (*Id.* at ECF 5–7.)  The motion asserts that because 18 U.S.C. § 924(c)(1)(A) "does not have as an element 'constructive possession,'" the Court lacked jurisdiction to impose a sentence with respect to Rodriguez's conviction under that statute.  (*Id.* at 7.)

On November 15, 2019, Rodriguez filed a memorandum of law in support of his § 2255 motion.  (Defendant's Memorandum of Law in Support of § 2255 Motion ("Def.'s Mem."), Dkt. 220, at ECF 1.)  The Government filed a response opposing the motion on August 31, 2020.  (Govt.'s Opp., Dkt. 225.)  Rodriguez replied on September 30, 2020.  (Defendant's Reply ("Def.'s Reply"), Dkt. 227, at ECF 6.)

---

[7]  Under the "prison mailbox" rule, which has been extended to *pro se* habeas petitions and motions, the date of filing of a document is the date on which the document is given to prison officials.  *See Noble v. Kelly*, 246 F.3d 93, 97–98 (2d Cir. 2001) (per curiam).  Motions under 28 U.S.C. § 2255 are subject to a one-year statute of limitations.  28 U.S.C. § 2255(f); *see also Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) (per curiam).

[8]  Judge Townes instructed the jury as follows with respect to possession of the firearm: "Possession means that the defendant either had physical control of the firearm on his person or that he had dominion and control over the place where the firearm was located, and had the power and intention to exercise control over the firearm."  (Jury Charge, Dkt. 148, at 49.)

11

**DISCUSSION**

I.      **Legal Standard Governing Motions Under 28 U.S.C. § 2255**

Section 2255 permits "[a] prisoner in custody under sentence of a [federal] court" to "move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such habeas relief, the defendant must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks omitted) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)). Additionally, where constitutional error is "of the trial type," the error must have "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Peck v. United States*, 106 F.3d 450, 456 (2d Cir. 1997) (applying *Brecht* to a § 2255 motion). In other words, the error must have "resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). "The burden of persuasion is on the government, meaning that if 'the matter is so evenly balanced that [the federal judge] feels himself [or herself] in virtual equipoise as to the harmlessness of the error' the petitioner should prevail." *Lainfiesta v. Artuz*, 253 F.3d 151, 158 (2d Cir. 2001) (first alteration in original) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).

In general, a § 2255 motion is not a substitute for a direct appeal. *See generally United States v. Frady*, 456 U.S. 152, 164–66 (1982). Thus, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in [a § 2255 motion] only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted); *see also Campino v. United States*, 968 F.2d 187, 190 (2d Cir. 1992) ("It is generally

accepted that a procedural default of even a constitutional issue will bar review under § 2255, unless the defendant can meet the 'cause and prejudice' test." (collecting cases)).  But "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

## II.    Rodriguez's Claims Do Not Provide Grounds for Habeas Relief

Rodriguez's § 2255 motion centers on a claim that he was denied effective assistance of counsel because his trial counsel, Sullivan, purportedly misrepresented that a motion to suppress evidence discovered at the 249 Concord Road residence had been filed and denied when no such motion was filed.  (*See* 2255 Motion, Dkt. 217, at ECF 5; Def.'s Mem., Dkt. 220, at ECF 4–12.) Rodriguez also claims that Sullivan was ineffective for failing to object to the inclusion of a jury charge regarding "constructive possession," arguing that Rodriguez's § 924(c)(1)(A) conviction and sentence for possession of a firearm must be vacated because the statute does not encompass constructive possession.[9]  (*See* 2255 Motion, Dkt. 217, at ECF 6–7; Def.'s Mem., Dkt. 220, at ECF 12–14.)  These claims are meritless.

### A.    Legal Standard Governing Ineffective-Assistance-of-Counsel Claims

A claim of ineffective assistance of counsel is evaluated under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Terry Williams v. Taylor*, 529

---

[9]    Although Rodriguez's claim of ineffective assistance of counsel with regard to the constructive-possession jury charge and his claim that the Court lacked jurisdiction to sentence him under 18 U.S.C. § 924(c)(1)(A) are presented as two separate claims, the premise of both claims is that 18 U.S.C. § 924(c)(1)(A) does not encompass "constructive possession." (S*ee* 2255 Motion, Dkt. 217, at ECF 6–7.)  Indeed, Defendant's memorandum of law does not separate these two claims.  (*See* Def.'s Mem., Dkt. 220, at ECF 12–14.)  Accordingly, the Court discusses and analyzes these claims together.

U.S. 362, 390–91 (2000) (affirming that ineffective-assistance-of-counsel claims "are squarely governed" by *Strickland*).

The first prong of *Strickland* requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This standard of reasonableness encompasses a "wide range of professionally competent assistance," *id.* at 690, and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689. In fact, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," and even "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 690–91; *see also Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) ("We will not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside." (internal quotation marks and citation omitted)). There are, however, no bright line or mechanical rules. Given the "countless ways to provide effective assistance in any given case," a court evaluating an ineffectiveness claim "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *See Strickland*, 466 U.S. at 689–90. "[T]he court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.* at 690.

The second prong of *Strickland* requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This standard does *not* require the defendant to show that counsel's deficient performance "more likely than not altered the outcome of the case," but at the same time,

merely showing that counsel's errors "had some conceivable effect on the outcome of the proceeding" is insufficient.  *See id.* at 693; *accord Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 693).  Like the performance prong, the prejudice prong is ultimately concerned with the reliability and fairness of the proceeding, which can be undermined even if the defendant cannot show by a preponderance of the evidence that counsel's errors were outcome-determinative.  *See Strickland*, 466 U.S. at 694.  Accordingly, a "reasonable probability" of prejudice under *Strickland*'s second prong "is a probability sufficient to undermine confidence in the outcome."  *Id.*  Where, as here, a claim of ineffective assistance of counsel is based on defense counsel's failure to pursue a suppression motion, the defendant must "prove that his Fourth Amendment claim is meritorious," as well as "a reasonable probability that the verdict would have been different absent the excludable evidence," to demonstrate prejudice under *Strickland*'s second prong.  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also Nell v. James*, 811 F.2d 100, 106 (2d Cir. 1987) (explaining that where an ineffective-assistance-of-counsel claim is based on counsel's failure to litigate a Fourth Amendment issue, the defendant "must establish, first, that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy, second, that he had a meritorious Fourth Amendment claim, and, finally, that there is a reasonable probability that the verdict would have been different had the objectionable evidence not been admitted" (internal citations omitted)).[10]

---

[10]   Although the Second Circuit has not directly addressed the issue, there is general agreement among other circuits that a defendant who has established a "reasonable probability" of prejudice under *Strickland* has satisfied *Brecht*'s requirement that a trial error not be harmless, and therefore, a separate analysis under *Brecht* would be redundant.  *See Byrd v. Workman*, 645 F.3d 1159, 1167 n.9 (10th Cir. 2011) ("[A]pplying the *Brecht/McAninch* harmless-error test is a needless formality in the context of a *Strickland* claim, which itself demands a showing that the alleged deficiency was prejudicial. . . . [A] second prejudice analysis under *Brecht/McAninch* is therefore unnecessary when considering ineffective-assistance-of-counsel claims." (collecting cases from the Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Circuits)).

**B.      Rodriguez's Claim that He Was Denied Effective Assistance of Counsel Because He Was Misled About a Motion to Suppress Evidence from 249 Concord Road Is Not a Basis for Habeas Relief**

To the extent that Rodriguez may have been misled regarding a motion to suppress evidence from the house at 249 Concord Road,[11] he fails to establish prejudice, and therefore, his ineffective-assistance claim with respect to the suppression motion does not provide grounds for habeas relief.[12]

---

[11]   The Court notes that the record does not clearly show that Rodriguez's defense counsel completely failed to file a motion to suppress evidence obtained from the 249 Concord Road house. Although Judge Townes ultimately construed Rodriguez's suppression motion as one to suppress items recovered from the searches of the Jeep Liberty, Deasis, and Rodriguez, *see generally*, 2015 WL 1439869, at *1, the written motion on its face requested suppression of "all property seized in this case" and "all evidence derived from the illegal search and seizures," (Pretrial Mot., Dkt. 43, at 1), and the memorandum of law in support of the motion specifically included a request to suppress "information agents and officers used to obtain search warrants authorizing searches of [Rodriguez's] cell phone and a piece of mail addressed to his name," *i.e.*, the Verizon bill found at the house (Pretrial Mem., Dkt. 45, at 16; *see also* Search Warrant and Affidavit In Support of Search Warrant Regarding Piece of Mail Addressed to Angelo Rodriguez, Dkt. 45-7). Additionally, at the suppression hearing, Rodriguez's counsel questioned the Government's witness about the lack of a search warrant with respect to the search of the house, and it was not until the Government raised the issue of Rodriguez's lack of standing in the house that defense counsel expressly conceded that Rodriguez did not have standing to challenge the search of the house. (*See* Govt.'s Opp., Dkt. 225, at 6–7.)   In any event, the Court need not resolve any ambiguity regarding whether Rodriguez was misled about a suppression motion with respect to evidence from the house, because even if Rodriguez were misled, he has failed to demonstrate prejudice.

[12]   The Court does not make any determination with respect to the performance prong under *Strickland*.  As *Strickland* instructs,

> a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697; *accord Garner v. Lee*, 908 F.3d 845, 861 (2d Cir. 2018).

To start, Rodriguez does not "prove that his Fourth Amendment claim is meritorious." *See Kimmelman*, 477 U.S. at 375.  Even assuming that Rodriguez had standing to challenge the search of the house, any suppression motion would have failed because Gamez Parra provided voluntary consent to the officers to search the house.  As the Supreme Court has made clear, "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *United States v. Matlock*, 415 U.S. 164, 170 (1974); *see also United States v. McGee*, 564 F.3d 136, 138–39 (2d Cir. 2009) ("A warrantless police search of a defendant's private premises . . . is lawful if conducted pursuant to the consent, voluntarily given, of another person who has authority to consent by reason of that person's 'common authority over or other sufficient relationship to the premises.'" (quoting *Matlock*, 415 U.S. at 171)).  As a general matter, "[c]onsent must be a product of [an] individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority." *United States v. Wilson*, 11 F.3d 346, 351 (2d Cir. 1993) (internal citations omitted).  At the same time, "neither the fact that a person is in custody nor that she has been subjected to a display of force rules out a finding of voluntariness." *United States v. Moreno*, 701 F.3d 64, 77 (2d Cir. 2012) (collecting cases).  The issue of voluntary consent ultimately "is a question of fact to be determined from all of the surrounding circumstances." *Id.* at 76 (quoting *United States v. Arango-Correa*, 851 F.2d 54, 57 (2d Cir. 1988)).

The totality of the circumstances in this case, as adduced at trial, indicates that Gamez Parra voluntarily consented to a search of the house, and such consent was valid as to Rodriguez.  One of the officers from the Task Force who participated in the search of the house—Investigator Christopher Behun—testified at trial that when officers approached the house and knocked on the door, Gamez Parra answered the door.  (Trial Tr., at 337:1–10.)  The officers asked Gamez Parra

17

if he lived at the house, and when Gamez Parra began speaking in Spanish, one of the officers who spoke Spanish took the lead in communicating with Gamez Parra. (*Id.* at 337:10–15.) Gamez Parra gave permission to the officers to enter the house, told the officers that he was the only person in the house, and informed the officers that he was staying in one of the bedrooms. (*See id.* at 337:25–339:5.) Indeed, as Rodriguez's attorney emphasized in closing arguments at trial, Gamez Parra appeared as if he had just gotten out of bed when the officers arrived at the house. (*See id.* at 1034:7–8.) In the living room area of the house, the officers—through the officer who spoke Spanish—asked Gamez Parra if they could search the house, and Gamez Parra gave verbal consent. (*Id.* at 339:5–8.) Gamez Parra subsequently advised the officers that there was a gun in the house and that it was downstairs in the basement. (*Id.* at 339:11–14.) Gamez Parra was not placed under arrest until after the officers had searched the house and found the gun and 40 kilograms of cocaine in the basement. (*See id.* at 380:16–18.)

Rodriguez provides nothing to show that Investigator Behun would have testified differently at a suppression hearing, or that the Court would not have found Behun's testimony credible. Rather, Rodriguez simply makes a conclusory assertion in his opening brief, without any explanation, that Gamez Parra's consent "was highly dubious" (*see* Def.'s Mem., Dkt. 220, at ECF 7), and argues later in his reply brief that Gamez Parra could not have provided effective consent because Gamez Parra "did not speak English sufficient to grant knowing consent" (Def.'s Reply, Dkt. 227, at ECF 4). But as Behun testified at trial, Gamez Parra provided verbal consent through an officer who communicated with Gamez Parra in Spanish. (*See* Trial Tr., at 339:5–8.) Rodriguez's contention is thus unavailing. *Cf. United States v. Montiel*, No. 12-CR-533 (PAC), 2013 WL 5904309, at *6 (S.D.N.Y. Nov. 4, 2013) (finding that a defendant's inability to converse in English did not undermine the defendant's voluntary consent to a search of his apartment,

because the defendant communicated his consent through an agent who spoke to the defendant in his native Spanish).

Under the totality of the circumstances of this case—including Gamez Parra answering the door to the house, giving permission for the officers to enter, telling the officers that he was the only person in the house and that one of the bedrooms was his, providing verbal consent to a search of the house, and then advising the officers that there was a gun in the basement, as well as the apparent lack of any coercion or use of force—the Government likely would have been able to show by a preponderance of the evidence that Gamez Parra provided voluntary consent to a search of the house, and that such consent was also valid as to Rodriguez. *Cf. Moreno*, 701 F.3d at 76–77 (affirming a finding of voluntary consent where the defendant was calm when asked to consent to a search and immediately gave permission for the search, even though the officers had forcibly entered the defendant's motel room, handcuffed her, and did not advise her that she could refuse consent); *Montiel*, 2013 WL 5904309, at *5–6 (finding voluntary consent where the defendant appeared to have understood that he exercised some control over the situation, was not threatened or coerced, and consented to a search in Spanish through a Spanish-speaking officer); *United States v. Zadiriyev*, No. 08-CR-1327 (HB), 2009 WL 1033365, at *6 (S.D.N.Y. 2009) (finding voluntary consent where the defendant gave only verbal consent and would not sign a written consent form, because the defendant's initial reaction was to permit the search, the defendant was told that "he could either provide consent or the agents would apply for a warrant," and "nothing in the record . . . indicate[d] that [the defendant] was overcome with fear or otherwise prevented from making free choices"); *cf. also McGee*, 564 F.3d at 141 (concluding that the consent of a person who lived with the defendant was effective as to the defendant, even though the third party was locked out of the house at the time she consented to the search); *United States v. Lovelock*, 170

19

F.3d 339, 345 (2d Cir. 1999) ("A person who occupies premises jointly with another has a reduced expectation of privacy since he assumes the risk that his house-mate may engage in conduct that authorizes entry into the premises." (collecting cases)).  Therefore, with respect to the first element of the *Strickland* prejudice prong, Rodriguez fails to prove that his Fourth Amendment claim is meritorious.

In addition to failing to prove a meritorious Fourth Amendment claim, Rodriguez also fails to show a "reasonable probability" that the outcome of the proceedings would have been different had he not been misled about the suppression motion.  *See Kimmelman*, 477 U.S. at 375; *Strickland*, 466 U.S. at 694.  Rodriguez does not clearly explain how this case would have ended differently had he not been misled about the suppression motion.  He asserts in general that "a defendant faced with the difficult choice of whether to plead guilty or proceed to trial relies heavily on skilled counsel to guide him/her through the complex legal maze of criminal proceedings." (Def.'s Mem., Dkt. 220, at ECF 11.)  But Rodriguez does not say, or even suggest, that he would have accepted a plea offer, nor is there any indication that the Government made him one.  (*See id.* at ECF 11–12.)  Even if Rodriguez now believes he would have accepted a plea agreement (assuming one had been offered), a defendant's self-serving, post-conviction testimony regarding an intent to accept a plea agreement, by itself, is insufficient to establish a "reasonable probability" that the defendant would have pleaded guilty.  *See United States v. Gordon*, 156 F.3d at 376, 380–81 (2d Cir. 1998) (citing *Johnson v. Duckworth*, 793 F.2d 898, 902 n.3 (7th Cir. 1986)); *see also Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) (concluding that a defendant failed to show prejudice, and rejecting a claim of ineffective assistance of counsel in a § 2255 motion, because the defendant's awareness of a plea offer and after-the-fact testimony concerning a desire to plead, without more, was insufficient to establish a reasonable probability that the defendant

would have accepted the plea).  Rodriguez points to no objective evidence—and the Court finds none—that indicates Rodriguez would have accepted a plea agreement had one been offered. Moreover, the Court notes that Rodriguez's amended sentence of 15 years with respect to his two counts of conviction (Amended Judgment as to Rodriguez, Dkt. 213, at ECF 1–2) is the mandatory minimum, *see* 21 U.S.C. § 841(b)(1)(A); 18 U.S.C. §§ 924(c)(1)(A)(i), (c)(1)(D).  So, if Rodriguez had pleaded guilty to the same two counts, he could not have received a lower sentence.

In short, regardless of whether Rodriguez was actually misled about whether his trial counsel moved to suppress the evidence recovered from the 249 Concord Road house, he fails to establish prejudice, and his claim of ineffective assistance of counsel does not warrant habeas relief.[13]

---

[13]  Rodriguez asserts that an evidentiary hearing is necessary because there is a dispute of material fact regarding whether he was misled about a suppression motion with respect to evidence found at the house.  (*See* Def.'s Mem., Dkt. 220, at ECF 11–12; Def.'s Reply, Dkt. 227, at ECF 2.)  To warrant an evidentiary hearing on an ineffective-assistance-of-counsel claim in a motion under 28 U.S.C. § 2255, "the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'"  *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000)).  At the same time, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."  *Id.* (quoting Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Courts); *see also Contino v. United States*, 535 F.3d 124, 128 (per curiam) ("[T]he district court did not abuse its discretion in declining to hold an evidentiary hearing . . . because [the defendant] did not demonstrate a colorable claim of ineffective assistance.").  Here, as discussed above, there is no plausible or colorable ineffective-assistance-of-counsel claim, and it is plain from the record and written submissions that Rodriguez is not entitled to habeas relief.  Because the lack of prejudice in this case is plain, it is immaterial whether Rodriguez was misled into believing that a suppression motion with respect to evidence at the house was filed, thus making an evidentiary hearing unwarranted.  *See Puglisi*, 586 F.3d at 213; *Contino*, 535 F.3d at 128.

C.    **Rodriguez's Argument Regarding Constructive Possession Under 18 U.S.C. § 924(c)(1)(A) Is Meritless**

Rodriguez contends that his counsel was ineffective for not objecting to a jury charge regarding constructive possession, arguing that 18 U.S.C. § 924(c)(1)(A) does not encompass constructive possession.  (*See* 2255 Motion, Dkt. 217, at ECF 6–7; Def.'s Mem., Dkt. 220, at ECF 12–14.)  This claim is meritless.

As an initial matter, the Court notes that the charge in the Indictment is that Rodriguez "did knowingly and intentionally use and carry a firearm during and in relation to a drug trafficking crime . . . and did knowingly and intentionally possess said firearm in furtherance of such drug trafficking crime."  (S-1 Indictment, Dkt. 49, ¶ 3.)  This language tracks the language of the statute.  *See* 18 U.S.C. § 924(c)(1)(A) (covering "any person who, during and in relation to any . . . drug trafficking crime . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm").

In addition, it is well-established that "either actual or constructive possession of a firearm in furtherance of a drug trafficking crime will violate section 924(c)."  *United States v. Albarran*, 943 F.3d 106, 118 (2d Cir. 2019) (citing *United States v. Gaines*, 295 F.3d 293, 300 (2d Cir. 2002)); *see also United States v. Chavez*, 549 F.3d 119, 129 (2d Cir. 2008) ("In order to establish that a defendant possessed a firearm within the meaning of § 924(c), the government need not prove that he physically possessed it; proof of constructive possession is sufficient." (citations omitted)), *abrogated on other grounds by Dean v. United States*, 137 S. Ct. 1170 (2017); *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001) ("Possession of a firearm may be established by showing that the defendant knowingly [had] the power and the intention at a given time to exercise dominion and control over an object.  Dominion, control, and knowledge may be inferred by a defendant's exclusive possession of the premises." (alteration in original) (internal quotation

22

marks and citations omitted)).  Finally, Rodriguez identifies no other error—and the Court finds

none—in the jury charge given by Judge Townes regarding the possession element of the § 924(c)

count.   Accordingly, Rodriguez's claim regarding constructive possession under 18 U.S.C.

§ 924(c)(1)(A) is meritless and does not provide grounds for habeas relief.

## CONCLUSION

Rodriguez's motion under 28 U.S.C. § 2255 is denied.  A certificate of appealability shall

not issue because the Court does not find that reasonable jurists could debate that the motion

"should have been resolved in a different manner" or that it presents issues "adequate to deserve

encouragement to proceed further."  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also* 28 U.S.C. § 2253(c).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 8, 2021
        Brooklyn, New York

23